IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WOLVERINE GROUP PTY LTD, WILD WOOL AUSTRALIA PTY LTD, WILD WOOL PRODUCTIONS PTY LTD, WILD WOOL RETAIL PTY LTD, TODD MICHAEL WATTS, AND DOES 1-10, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| WILD WOOL PRODUCTIONS PTY LTD, | ) ) ) |
| Counter-Plaintiff, | ) ) |
| v. | ) ) |
| DECKERS OUTDOOR CORPORATION, | ) ) ) |
| Counter-Defendant. | ) |

Case No. 1:24-cv-3164

Judge Sharon Johnson Coleman

Magistrate Judge Jeannice W. Appenteng

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deckers Outdoor Corporation designs and sells footwear and other products under the UGG brand and holds multiple UGG trademark registrations with the U.S. Patent and Trademark Office. In this lawsuit, plaintiff alleges that Australian defendants Wolverine Group Pty Ltd ("Wolverine"), Wild Wool Australia Pty Ltd ("WWA"), Wild Wool Productions Pty Ltd ("WWP"), Wild Wool Retail Pty

Ltd ("WWR"), and Todd Michael Watts, who is the Managing Director of each company, have infringed and diluted the UGG marks in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Patent Act, 35 U.S.C. § 1 *et seq.* Currently before the Court is plaintiff's motion to compel jurisdiction-related discovery it says is necessary to respond to defendants' motions to dismiss. For the reasons stated here, the motion to compel is granted in part and denied in part.

## BACKGROUND[1]

### I. The Defendants

Wolverine, WWP, WWR, and WWA are closely held entities that are managed by defendant Watts and operate out of the same address in Queensland, Australia. Dkts. 102-1, 102-2, 102-3, 102-4. WWP, WWR, and WWA are owned by the Watts Parsons Family Trust, with Wolverine serving as Trustee. Dkt. 90-2, Watts 3/10/2025 Aff., ¶ 13. Wolverine was established in September 2015 as a holding company. Mr. Watts owns Wolverine's two shares of stock and his wife was Managing Director until he replaced her in November 2023. Dkt. 78, SAC, ¶ 18; Dkt. 102-1.

In May 2017, Mr. Watts formed WWP and WWR and became the Managing Director and Secretary of both companies, with his wife again serving as General Manager. Dkts. 102-3, 102-4. WWP and WWR each have a single share of stock which Mr. Watts owns. *Id.* On June 2, 2017, WWP and WWR purchased the

---

[1] In ruling on this motion the Court has considered defendants' sur-reply found at [122-1]. Accordingly, defendants' motion for leave to file a sur-reply [121], [122] is granted.

kangaroo fur and sheep skin business from a company called KF & S Pty Ltd, which was then liquidated. Dkt. 115 at 6; Dkt. 78, SAC, ¶ 28; Dkt. 115-7 at 9, ROG 22.

Wolverine separately purchased KF & S's intellectual property, including the following marks and logos relevant to this lawsuit: (1) UGG SINCE 1974, Australian Trademark Registration ("ATR") No. 1968822; (2) UGG AUSTRALIAN MADE SINCE 1974, ATR No. 1582832; and (3) UGG REPUBLIC, ATR No. 1366195. Dkt. 90-2, Watts 3/10/2025 Aff., ¶ 3; Dkt. 78, SAC, ¶¶ 28, 29. Wolverine claims that it started licensing those marks to WWP and WWR in June 2017, Dkt. 115-3 at 10, ROG 21, at which point WWP began making UGG-branded footwear and other products. Dkt. 115-3 at 11, ROG 23. WWP operates the websites and social media accounts used to market those products, Dkt. 115-7 at 5-6, ROGs 15, 16, but Wolverine is the registrant of the domain names. Dkt. 90-2 ¶ 12.

WWR sells the products that WWP manufactures. Prior to the global pandemic, WWR had several retail stores in Australia but currently has only one physical store located on the WWP premises in Australia. Dkt. 102-16, Watts 1/13/2025 Aff., ¶ 13. Mr. Watts claims that WWR "pays fair-market rent" to WWP for use of the retail space. *Id*. WWA was formed on March 19, 2021 with Mr. Watts as Managing Director and Secretary and owner of the company's single share of stock. Dkt. 102-2. According to defendants, WWA was organized to wholesale UGG-branded products made by WWP to third-party retailers in Australia. Dkt. 115-5 at 9, ROG 23. Defendants claim that WWA ceased operations following the Covid-19 pandemic and is "an inactive entity." *Id*.; Dkt. 115 at 7.

3

## II. The Motion to Compel

Plaintiff filed suit alleging that each defendant has engaged in unlawful trademark infringement and dilution of its UGG marks. All of the defendants answered plaintiff's Amended Complaint, Dkt. 37, but seek dismissal of the Second Amended Complaint ("SAC") on various grounds. Dkt. 90, 93, 94, 95. Relevant here are arguments that this Court lacks personal jurisdiction over Wolverine and WWA, and that there is no basis to pierce the corporate veil to hold those entities or Mr. Watts liable for any actions by WWP and WWR. Dkts. 90, 93, 95. Plaintiff has moved to compel responses to several requests for production ("RFP") and a Rule 30(b)(6) deposition of Mr. Watts, arguing that the discovery is necessary to respond to defendants' jurisdictional and veil-piercing arguments. Defendants object that plaintiff cannot make the requisite showing of entitlement to jurisdictional discovery and say that they have fully responded to the RFPs in any event, making a deposition unnecessary and wasteful. Dkt. 115; Dkt. 122-1.

## DISCUSSION

## I. Standard of Review

"The Court has broad discretion to order jurisdictional discovery to ascertain whether it has personal jurisdiction over named defendants." *Esquivel v. Airbus Americas, Inc.*, No. 20 C 7525, 2021 WL 4395815, at *1 (N.D. Ill. May 3, 2021). To secure jurisdictional discovery, plaintiff "must first make a 'colorable' showing of personal jurisdiction." *Dale v. Deutsche Telekom AG*, No. 22 C 3189, 2023 WL 7220054, at *8 (N.D. Ill. Nov. 2, 2023); *see also Cent. States, Se. & Sw. Areas Pension*

4

*Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).[2] Courts generally grant jurisdictional discovery if the plaintiff "can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Gillam v. Abro Kalamazoo 3, Inc.*, 712 F. Supp. 3d 1079, 1084 (N.D. Ill. 2024) (quoting *Gilman Opco LLC v. Lanman Oil Co., Inc.*, No. 13 C 7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014)). Though this standard is low, discovery will not be permitted based on "bare, attenuated, or unsupported assertions of personal jurisdiction." *Id.*

"In ruling on a motion to take jurisdictional discovery, the Court accepts as true the factual allegations relevant to jurisdiction made in Plaintiff's complaint and draws all reasonable inferences in Plaintiff's favor." *Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16 C 8656, 2017 WL 2985757, at *4 (N.D. Ill. July 13, 2017) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006)). However, if defendants submit affidavits opposing jurisdiction or contradicting plaintiff's allegations, plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The Seventh Circuit has cautioned that "[f]oreign nationals

---

[2] In *Reimer*, the Seventh Circuit stated that a plaintiff must establish "a colorable *or prima facie* showing of personal jurisdiction before discovery should be permitted." 230 F.3d at 946 (emphasis added). Several district courts have noted that since "a 'prima facie' showing based on the written submissions is sufficient to establish personal jurisdiction, it seems illogical to apply this standard to a request for discovery." *Bradford Victor-Adams Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, No. 18 C 4167, 2019 WL 3604594, at *4 n.4 (C.D. Ill. Aug. 6, 2019); *Dale*, 2023 WL 7220054, at *8 n.8; *Rebel Hospitality LLC v. Rebel Hospitality LLC*, No. 21 C 5132, 2022 WL 797035, at *6 n.4 (N.D. Ill. Mar. 16, 2022). This Court agrees that *Reimer's* "heightening of the standard to secure discovery seems to be unintentional" and so applies a "colorable" standard to plaintiff's request for jurisdictional discovery. *Id.*

5

usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *Reimer*, 230 F.3d at 946.

## II. Analysis

### A. Colorable Showing of Jurisdiction

Plaintiff's SAC alleges that Mr. Watts "personally directed, controlled, and participated in the manufacture, offering for sale and sale of Infringing Products to consumers in the United States bearing Deckers' UGG Trademarks and incorporating Deckers' Patented UGG Designs." Dkt. 78, SAC, ¶ 22. Plaintiff makes similar allegations that Mr. Watts has directed and controlled the "deliberate attempts to dilute and tarnish Deckers' UGG Trademarks and undermine Deckers' right to the exclusive use of Deckers' UGG Trademarks." *Id*.

With respect to the four corporate entities (the "Pty Ltd Defendants"), plaintiff alleges that they are alter egos of Mr. Watts and "there is such a unity of interest and ownership that the individuality or separateness of Mr. Watts and the Pty Ltd Defendants has ceased, and adherence to the fiction of the separate existence of the Pty Ltd Defendants would, under the circumstances presented by this case, sanction a fraud or promote injustice." *Id.* ¶ 23. Plaintiff claims that: the corporate defendants and Mr. Watts have commingled funds and other assets; Mr. Watts has treated assets of the corporations as his own; Mr. Watts has failed to adequately capitalize the corporate defendants; the corporations are "mere shells, instrumentalities, or conduits for the business of Mr. Watts"; and Mr. Watts has

disregarded corporate formalities and failed to maintain an arm's length relationship with the corporate defendants. *Id.*

Defendants argue that these allegations are insufficient to justify jurisdictional discovery, citing affidavits from Mr. Watts stating that Wolverine, WWA, WWP, and WWR are wholly independent entities that maintain all corporate formalities and are entirely independent of one other. Dkt. 102-14, Watts 10/25/2024 Aff.; Dkt. 102-16, Watts 1/13/2025 Aff.; Dkt. 90-2, Watts 3/10/2025 Aff.; Dkt. 93-2, Watts 3/10/2025 Aff. According to defendants: (1) WWP and WWR are the only entities that have been involved in the marketing and selling of accused UGG-branded products in the U.S.; (2) WWP is the only entity involved in the manufacture of the accused UGG-branded products; (3) Wolverine licenses the UGG trademarks to WWP and WWR but does not control how they use the marks; and (4) neither Wolverine nor WWA has any suit-related contacts with the United States. Dkt. 115 at 6, 12-13.

The Court agrees with defendants' general proposition that "[m]ere overlap in ownership or close control of a corporation is insufficient to pierce the corporate veil." Dkt. 115 at 13. *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008). But the question here is not whether plaintiff can affirmatively prove the corporate veil should be pierced, but whether plaintiff should be permitted some jurisdictional discovery to test defendants' assertions regarding corporate independence. *Cf. Helping Hand Caregivers, Ltd. V.*

7

*Darden Restaurants, Inc.*, 900 F.3d 884, 890 (7th Cir. 2018) (addressing proper scope of discovery for purposes of a Rule 56 motion for summary judgment).

Mr. Watts is the sole owner/shareholder of every one of the corporate entities. He serves as the corporate representative who both offered and accepted licensing agreements for UGG-branded products, and he runs the entities that manufacture and sell the licensed UGG-branded products. Given these overlapping relationships, plaintiff has made at least a colorable showing that Mr. Watts may be the alter ego of the corporate defendants and that the actions of one entity may be imputed to the others. This Court finds that targeted jurisdictional discovery is warranted to resolve ambiguities as to the corporate structures and operations of the defendants. *See, e.g., Nicks v. Koch Meat Co.*, No. 16 C 6446, 2016 WL 6277489, at *5 (N.D. Ill. Oct. 27, 2016) ("It is within the Court's discretion . . . to permit targeted jurisdictional discovery on Plaintiffs' 'alter ego' theory as to Koch Foods of Mississippi."); *Esquivel*, 2021 WL 4395815, at *2 (allowing jurisdictional discovery given ambiguity as to which entity was responsible for designing, manufacturing, and selling the allegedly defective product). *Compare Marks*, 2017 WL 2985757, at *5 (denying request for jurisdictional discovery in part because companies maintained separate and non-overlapping boards); *Ilustrata Servicos Design, LTDA v. PDD Holdings, Inc.*, No. 23 C 4824, 2024 WL 3177901, at *3, 5 (N.D. Ill. June 26, 2024) (disallowing jurisdictional discovery where the plaintiff alleged nothing more than "a generic parent-subsidiary relationship").

## B. The Requested Discovery

Plaintiff seeks documents responsive to 11 RFPs[3] and a Rule 30(b)(6) deposition of Mr. Watts in the United States. Defendants insist that they have produced all relevant information and that a deposition would be unduly burdensome for Mr. Watts. The Court considers the requests in turn.

### 1. RFPs 54 and 60

RFPs 54 and 60 seek documents reflecting agreements, including License Deeds, between WWP, WWR, Wolverine, and the Watts Parsons Family Trust ("Trust"). Dkt. 102-5 at 27, RFP 60; Dkt. 102-8 at 9, RFP 54. As noted, Wolverine started licensing its UGG-branded marks to WWP and WWR in June 2017. Dkt. 115-3 at 10, ROG 21. In response to discovery requests, however, defendants have produced only a December 6, 2023 License Deed between Wolverine (acting as Trustee for the Trust), WWP, and WWR, which Mr. Watts signed on behalf of all three entities. Dkt. 124 at 5. Plaintiff has reasonably requested copies of any previous License Deeds involving the UGG-branded marks. Dkt. 120 at 8-9. Defendants say they are "actively searching for and w[ill] produce chain of title documents, which would include any other license deeds should they exist." Dkt. 122-1 at 7-8. Based on this representation, plaintiff's motion to compel as to RFPs 54 and 60 is granted.

---

[3] Plaintiff's motion to compel included RFPs 14, 61, and 77 but those requests are not mentioned in the reply brief. Dkt. 120. The Court deems the motion to compel responses to those requests withdrawn.

### 2. RFP 40

RFP 40 seeks documents "sufficient to identify all facilities owned, operated, controlled or used by Defendants in connection with the manufacture, distribution and sales of the Defendants' UGG Products." Dkt. 102-8 at 7, RFP 40. As noted, Wolverine, WWP, WWR, and WWA all operate out of the same address in Queensland, Australia. Dkts. 102-1, 102-2, 102-3, 102-4. Mr. Watts represents that WWR "pays fair-market rent" to WWP for use of the retail space, Dkt. 102-16, Watts 1/13/2025 Aff., ¶ 13, but defendants have not produced any lease agreements. The existence (or lack) of a lease may be relevant to whether the defendant companies have an arm's length relationship with one another and defendant does not argue that the leases would be burdensome to produce. To the extent Wolverine, WWP, WWR, WWA, and/or the Trust have any lease agreements among them, plaintiff's motion to compel their production is granted. Dkt. 120 at 10. Defendants shall also produce documents reflecting any rental payments made among the entities.

### 3. RFPs 70-73

RFPs 70-73 are aimed at discerning who controls, manages, owns, and operates the websites and social media accounts used to market UGG-branded products. Defendants claim that the December 2023 License Deed establishes that all domain names and social media accounts owned by Wolverine have been licensed to WWP and WWR since 2017. Dkt. 122-1 at 8; Dkt. 124. Defendants have already agreed to search for and produce any additional license agreements, and

10

they must also produce documents reflecting ownership/registration of the domain names and social media accounts used to market and sell the accused UGG-branded products. As for "who creates the content" on the website and runs the social media accounts, plaintiff may issue an interrogatory requesting the name(s) of such individual(s). Plaintiff's motion to compel responses to these requests is otherwise denied.

### 4. RFPs 69 and 76

In response to RFPs 69 and 76, which seek information about defendants' governance and ownership, WWP produced its "Constitution" describing, among other things, protocols for the issuance of shares, rules regarding meetings of the company, bylaws regarding management of the company, and identification of the members of WWP. Dkt. 120 at 12. Defendants have declined to produce similar documentation for Wolverine, WWR, or WWA. *Id.* The existence or lack of such governance documents may be relevant to determining whether defendants have observed proper corporate formalities, which may speak to the existence of personal jurisdiction. Production of such documents would not be burdensome and plaintiff's motion to compel is granted.

### 5. RFPs 36 and 91

RFPs 36 and 91 seek information about the Watts Parsons Family Trust, including the Trust instrument, amendments to the instrument, and any assets controlled by the Trust. Dkt. 120 at 6; Dkt. 102-8 at 7, RFP 36; Dkt. 102-5 at 42, RFP 91. As plaintiff explains, it seeks to understand "the relationship of the Watts

11

Parsons Family Trust to each of the Defendants, its ownership of one or more of the Defendants, its ownership and license of the IP that is the subject of this action, and its involvement in or knowledge of any of the Defendants' operations that gave rise to the claims asserted in this action." Dkt. 120 at 7.

The Trust is not a named defendant in this case and the broad request for information about all of its assets is unduly burdensome and denied. Since the Trust owns WWP, WWR, and WWA and is identified as each entity's sole affiliate, however, defendants must produce documents evidencing the Trust's ownership of those companies and/or the UGG marks at issue in this case. Dkt. 120 at 6; Dkt. 90-2 ¶ 13. Unrelated information may be redacted.

### 6.    30(b)(6) Deposition

Finally, plaintiff seeks to compel Mr. Watts to travel to the United States for a Rule 30(b)(6) deposition in his capacity as the corporate representative of each entity. Dkt. 101 at 15; Dkt. 120 at 15-16. Plaintiff says the deposition is necessary to "provide clarity as to certain looming ambiguities," including: "(1) the existence or non-existence of Defendants WWA's, Wolverine's, and WWR's constitutions; (2) the ownership, operation, and control of Defendants' Website and social media accounts; (3) the ownership, licensing, and control over the IP assets at issue in this action; (4) the nature of each Defendant's occupancy at Defendants' Address; (5) the status of WWA, where he has alleged that it only continues to exist due to this lawsuit; (6) the purpose, operation, scope, reach, control, and ownership of each Entity Defendant; and (7) whether the Defendants are or were working together to engage

in the unlawful conduct that is the subject of this action and whether any or all of them have benefitted as a result." Dkt. 120 at 16. Defendants reiterate their flawed arguments about there being a lack of a colorable claim of jurisdiction, and object that plaintiff is attempting to "drive up costs and impose an undue burden on Mr. Watts" by insisting that he travel from Australia to the United States for a limited deposition on jurisdictional topics. Dkt. 115 at 17.

Plaintiff's motion to compel a Rule 30(b)(6) deposition is granted. The Court has already determined that some jurisdictional discovery is warranted, and Mr. Watts is best situated to address any questions concerning the corporate structures and operations of the defendant entities. The deposition will count against the 10-deposition limit and the parties shall meet and confer regarding the topics, timing, and location of the deposition. To minimize the burden on Mr. Watts, the parties shall keep in mind that the Court will not require Mr. Watts to travel to the United States for a deposition solely related to issues of jurisdiction absent a showing of unusual circumstances. *Tile Unlimited, Inc. v. Blanke Corp.*, No. 10 C 8031, 2013 WL 2451143, at *1 (N.D. Ill. June 5, 2013) (quoting *Chris–Craft Indus. Prods., Inc., v. Kuraray Co.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999)) ("When a corporation objects to a deposition being taken at a place other than its principal place of business, 'the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation.'").

13

## CONCLUSION

For the reasons stated above, plaintiff's motion to compel [101] is granted in part and denied in part. The stay of discovery is lifted solely for the purpose of conducting jurisdictional discovery in accordance with this ruling.

**So Ordered.**

**DATED: 4/28/2025**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**